IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | |
| | : | Chapter 11 |
| THE IT GROUP, INC., et al., | : | |
| | : | Bankruptcy Case No. 02-10118-MFW |
| Debtors. | : | |
| | : | |
| | : | |
| JOHN ACCARDI, et al., | : | |
| | : | |
| Appellants, | : | |
| | : | |
| v. | : | Civil Action No. 04-146-JJF |
| | : | **CONSOLIDATED** |
| IT CORPORATION, et al., | : | |
| | : | |
| Appellees. | : | |
| | : | |
| ROCHELLE BOOKSPAN, | : | |
| | : | |
| Appellant, | : | |
| | : | |
| v. | : | |
| | : | |
| THE IT GROUP, INC, et al., | : | |
| | : | |
| Appellees. | : | |

John M. Stull, Esquire of JOHN M. STULL, ESQUIRE, Wilmington, Delaware.
Of Counsel:  Thomas A. Johnson, Esquire of the LAW OFFICES OF THOMAS A. JOHNSON, Santa Barbara, California.
Attorneys for Appellants, Rochelle Bookspan and John Accardi, et al.

Gregg M. Galardi, Esquire, Robert S. Saunders, Esquire and Rosemary S. Goodier, Esquire of SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Wilmington, Delaware.
Attorneys for Appellees, IT Corp. and The IT Group, Inc.

<u>**MEMORANDUM OPINION**</u>

March 31, 2005

Wilmington, Delaware

Farnan, District Judge.

Before the Court is a consolidated appeal by (1) John Accardi and 25 others, including Rochelle Bookspan ("Appellants"), from the February 3, 2004 Order of the Bankruptcy Court dismissing with prejudice the adversary proceeding captioned as <u>John Accardi, et al., v. IT Corporation</u>, et al., Adv. No. 02-05486-MFW, and (2) Rochelle Bookspan from the February 26, 2004 Order of the Bankruptcy Court dismissing the adversary proceeding captioned as <u>The IT Group, Inc., et al. v. Rochelle Bookspan</u>, Adv. No. 02-4756-MFW. For the reasons set forth below, the Court will affirm the Bankruptcy Court's February 3, 2004 and February 26, 2004 Orders.

## I.    The Parties' Contentions

By their appeal, Appellants contend that the Bankruptcy Court erred in dismissing their respective adversary proceedings for failure to state a claim upon which relief could be granted. Appellants contend that the Bankruptcy Court erred in concluded that the IT Deferred Compensation Plan (the "Plan") was an unfunded, "top hat" plan "maintained . . . primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees" under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"). Specifically, Appellants contend that the Bankruptcy Court ignored certain provisions of the Plan which gave the Plan's administrative committee discretion over funding and

identified certain beneficiaries.  In addition, Appellants
contend that the Bankruptcy Court ignored certain provisions in
the rabbi trust (the "Trust" or the "Rabbi Trust") created
pursuant to the Plan which Appellants contend demonstrate that
the Plan was funded.

In response, the Debtors contend that its Plan is an
unfunded, "top hat" plan, and therefore, the funding and
fiduciary responsibilities of ERISA do not apply.  The Debtors
contend that the Plan was structured and administered as an
unfunded benefit plan, as evidenced by the tax consequences to
the beneficiaries, the express language of the Plan and the
Trust, and the fact that no funds were actually deposited in the
Trust.  The Debtor contends that Appellants' argument is an
attempt to create a "legal fiction" by "deeming" the Plan funded.

## II.  Standard of Review

The Court has jurisdiction to hear an appeal from the
Bankruptcy Court pursuant to 28 U.S.C. § 158(a).  In undertaking
a review of the issues on appeal, the Court applies a clearly
erroneous standard to the Bankruptcy Court's findings of fact and
a plenary standard to its legal conclusions.  See Am. Flint Glass
Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d
Cir. 1999).  With mixed questions of law and fact, the Court must
accept the Bankruptcy Court's finding of "historical or narrative
facts unless clearly erroneous, but exercise[s] 'plenary review

2

of the trial court's choice and interpretation of legal precepts

and its application of those precepts to the historical facts.'"

Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635,

642 (3d Cir. 1991) (citing Universal Mineral, Inc. v. C.A. Hughes

& Co., 669 F.2d 98, 101-02 (3d Cir. 1981)).   The appellate

responsibilities of the Court are further understood by the

jurisdiction exercised by the Third Circuit, which focuses and

reviews the Bankruptcy Court decision on a de novo basis in the

first instance.   In re Telegroup, 281 F.3d 133, 136 (3d Cir.

2002).

## III. DISCUSSION

ERISA defines a "top hat" plan as:

a plan that is unfunded and is maintained by an
employer primarily for the purpose of providing
deferred compensation for a select group of management
or highly compensated employees.

ERISA §§ 201(2), 301(a)(3) and 401(a)(1).   "Top hat" plans are

subject to the administrative and enforcement provisions of

ERISA, but excluded from its substantive provisions, including

provisions related to plan funding and fiduciary

responsibilities.   ERISA §§ 301(a)(3), 401(a)(1).   Under ERISA, a

plan is unfunded if the beneficiary cannot establish "through the

plan documents, a legal right any greater than that of an

unsecured creditor to a specific set of funds from which the

employer is, under the terms of the plan, obligated to pay the

deferred compensation."   Demery v. Extebank Deferred Compensation

Plan, 216 F.3d 283, 287 (2d Cir. 2000).

Reviewing the decision of the Bankruptcy Court in light of the parties' arguments and the applicable legal principles, the Court concludes that the Bankruptcy Court did not err in concluding that the Plan was unfunded. The Bankruptcy Court's rationale is sound and the Court is persuaded that it is correct.

To the extent that Appellants contends that the Bankruptcy Court did not consider certain arguments raised by Appellants, the Court is persuaded that those arguments do not undermine the Bankruptcy Court's conclusion that the Plan is unfunded. That the Debtors did not retain authority over funding, but transferred discretionary authority to the Plan's administrative committee to determine when and what type of assets to transfer to the Trust under Section 12.1 of the Plan does not make the Plan "funded" within the meaning of ERISA. See DOL Op. Ltr. 91-16A. The Court is also not persuaded by Appellants argument that the delegation of discretion to the Plan's administrative committee makes the committee a fiduciary. The cases Appellants cite involve qualified ERISA plans that are not exempt from the ERISA fiduciary responsibility provisions. See, e.g., Coleman v. Nationwide Life Ins. Co., 969 F.2d 54 (4th Cir. 1992). In this case, the Plan is unfunded, and therefore, exempt from the fiduciary responsibility provisions.

Appellants also argue that a "good faith/reasonableness"

4

standard should be applied to obligate the administrative committee to order funding if it ever appeared that the Debtors were on the verge of insolvency.  Appellant contends that if the committee is obligated to order funding, then the Plan should be considered "funded" within the meaning of ERISA.  However, the duty of good faith and fair dealing "cannot be used to insert new terms that were not bargained for."  Lorenz v. CSX Corp., 1 F.3d 1406, 1415 (3d Cir. 1003).  In this case, the only trust created under the Plan is the Rabbi Trust, and thus, the only discretion afforded to the administrative committee is the discretion to set aside funds in that Trust.  Assets set aside in the Rabbi Trust would still have remained subject to the claims of the Debtors' general creditors pursuant to the express language of the Trust.  Trust § 9.1(b) (App. Vol. 2 at A266); DOL Op. Ltr. 91-16A (stating that it was "the working premise of the Department that a 'top hat' plan (or excessive benefit plan) would not fail to be 'unfunded' . . . solely because there is maintained in connection with such a plan a 'rabbi trust'").  There is no provision in the Plan that would require assets to be set aside in some other trust, and such a provision cannot be inserted by reference to a duty of good faith and fair dealing.  Lorenz, 1 F.3d at 1415.

Appellants also contend that the Plan should be considered funded, because the Debtors pre-approved amendments to the Trust to allow the Trust in the future to become a trust for "the

exclusive benefit of the participants," rather than a trust whose assets are subject to the claims of unsecured creditors. Appellants contend that this "exclusive benefit language" undermines the status of the Trust as a bona-fide rabbi trust. The Court disagrees with Appellants.  Section 9.1(b)(i) of the Trust Agreement upon which Appellants rely for the "exclusive benefit language" prohibits amendments that

> [c]ause any of the assets of the Trust to be used for or diverted to purposes other than for the exclusive benefit of Participants and Beneficiaries as set forth in the Plans, <u>except as is required to satisfy the claims of the Company's or a Subsidiary's general creditors</u> . . .

(App. Vol. 2 at A266) (emphasis added).  In addition, Section 9.1(e) of the Trust precludes any amendment that would cause the participants or beneficiaries under the Plan to be taxed on the benefits in a year other than the year of actual receipt of the benefits.  Thus, an amendment that would make the Trust funded would be precluded, because all participants and beneficiaries, even those who had not made claims for benefits, would be immediately taxed on the funds in the Plan.  <u>Sproull v. Comm'r</u>, 16 T.C. 244, 247-248 (1951) (recognizing that an economic benefit conferred on an employee as compensation in the taxable year is taxable to employee in that year, even if cash is not actually received by the employee that year).  Because the ability to amend the Trust is limited by Sections 9.1(b) and 9.1(e), and an amendment to the Trust may only be accomplished by the written

6

agreement of the Debtors and the Trustee, the Court does not read Section 9.1 to be pre-approval for any amendment, let alone an amendment which would transform the Rabbi Trust into a secular trust.

In sum, the Court concludes that the Bankruptcy Court correctly concluded that the Plan was "unfunded" within the meaning of ERISA.  The Bankruptcy Court's conclusion is supported by the express language of the Plan and the Trust, the tax treatment of the Plan by the Internal Revenue Service which is to be afforded weight, and the actual lack of funds deposited in the Trust.  As for the remaining arguments raised by Appellants concerning oral funding promises and its state law claims, those claims were thoroughly addressed by the Bankruptcy Court, and the Court is persuaded that the Bankruptcy Court's reasoning is correct.  Accordingly, the Court will affirm the February 3, 2004 Order and the February 26, 2004 Order of the Bankruptcy Court dismissing Appellants' adversary proceedings.

## IV.   CONCLUSION

For the reasons discussed, the Court will affirm the Order of the Bankruptcy Court dated February 3, 2004, dismissing with prejudice the adversary proceeding captioned as John Accardi, et al., v. IT Corporation, et al., Adv. No. 02-05486-MFW, and the Order of the Bankruptcy Court dated February 26, 2004, dismissing the adversary proceeding captioned as The IT Group, Inc., et al.

<u>v. Rochelle Bookspan</u>, Adv. No. 02-4756-MFW.

An appropriate Order will be entered.