FORM B10 (Official Form 10) (4/01)

| UNITED STATES BANKRUPTCY COURT | DISTRICT OF DELAWARE | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor: IT Corporation | Case Number: 02-10165 (mfw) | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property): Rochelle (Shelley) Bookspan | [X] Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
| Name and address where notices should be sent: 1807 Lasuen Rd. Santa Barbara, California 93103 | [X] Check box if you have never received any notices from the bankruptcy court in this case. |
| Telephone number: (805) 965-0629 | [ ] Check box if the address differs from the address on the envelope sent to you by the court. |

THIS SPACE IS FOR COURT USE ONLY

| Account or other number by which creditor identifies debtor: Employee # 803442 | Check here if this claim [ ] replaces [ ] amends a previously filed claim, dated: _____ |

**1. Basis for Claim**
- [ ] Goods sold
- [X] Services performed
- [ ] Money loaned
- [ ] Personal injury/wrongful death
- [X] Taxes
- [X] Other unfunded contributions to Deferred Compensation Plan, eff 1/1/96

- [ ] Retiree benefits as defined in 11 U.S.C. § 1114 (a)
- [X] Wages, salaries, and compensation (fill out below)
  Your SS #: _____ - __ - _____
  Unpaid compensation for services performed
  from June 1997 to December 1999
       (date)            (date)

**2. Date debt was incurred:** June 1997 - December 1999

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ 429,108.68 + int
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
[X] Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
[X] Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
- [ ] Real Estate
- [ ] Motor Vehicle
- [X] Other Employer's pre-bankruptcy assets

Value of Collateral: $ 100 million (est.)

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ 0

**6. Unsecured Priority Claim.**
[X] Check this box if you have an unsecured priority claim
Amount entitled to priority $ 429,108.68 + int
Specify the priority of the claim:
- [ ] Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- [X] Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- [ ] Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
- [ ] Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
- [ ] Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
- [X] Other - Specify applicable paragraph of 11 U.S.C. § 507(a) ( 1 ).
*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**7. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**8. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**9. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

RECEIVED 2002 JUL 12 PM 2:09 LOGAN & CO., INC.

Date July 10, 2002
Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): /s/ Rochelle Bookspan, Individually & on behalf of the IT Corp Def Comp Plan, eff 1/1/96

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

096

FORM B10 (Official Form 10) (4/01)

| UNITED STATES BANKRUPTCY COURT _____ DISTRICT OF **DELAWARE** _____ | | |
|---|---|---|
| Name of Debtor<br>IT Corporation | Case Number<br>02-10165 (mfw) | |

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>Rochelle (Shelley) Bookspan | [X] Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | |
|---|---|---|
| Name and address where notices should be sent:<br>1807 Lasuen Rd.<br>Santa Barbara, California 93103 | [X] Check box if you have never received any notices from the bankruptcy court in this case. | |
| | [ ] Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |
| Telephone number: (805) 965-0629 | | |
| Account or other number by which creditor identifies debtor:<br>Employee # 803442 | Check here if this claim  [ ] replaces  [ ] amends   a previously filed claim, dated: _____ | |

**1. Basis for Claim**
- [ ] Goods sold
- [X] Services performed
- [ ] Money loaned
- [ ] Personal injury/wrongful death
- [X] Taxes
- [X] Other  unfunded contributions to Deferred Compensation Plan, eff 1/1/96

- [ ] Retiree benefits as defined in 11 U.S.C. § 1114 (a)
- [X] Wages, salaries, and compensation (fill out below)
  Your SS #: ___ - __ - ____
  Unpaid compensation for services performed
  from  June 1997   to  December 1999
       (date)              (date)

**2. Date debt was incurred:**
June 1997 - December 1999

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:**    $ 429,108.68 + int
   If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
   [X] Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
[X] Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
[ ] Real Estate   [ ] Motor Vehicle
[X] Other  Employer's pre-bankruptcy assets
Value of Collateral: $ 100 million (est.)
Amount of arrearage and other charges at time case filed included in secured claim, if any: $ 0

**6. Unsecured Priority Claim.**
[X] Check this box if you have an unsecured priority claim
Amount entitled to priority $  429,108.68 + int
Specify the priority of the claim:
[ ] Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
[X] Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
[ ] Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
[ ] Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
[ ] Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
[X] Other - Specify applicable paragraph of 11 U.S.C. § 507(a) ( 1 ).
*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**7. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**8. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**9. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

Date  July 10, 2002

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): *Rochelle Bookspan*, individually & on behalf of the IT Corp Def Comp Plan, eff 1/1/96

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

B10

097

United States Bankruptcy Court
District of Delaware

*In re The IT Group, Inc., et al.*
Bankr. Case No. 02-10118 (MFW)
Proof of Claim

EXHIBIT # 1
**ADDITIONAL INFORMATION REGARDING PROOF OF CLAIM**

1. On July 5, 1995, the Board of Directors IT Corporation approved and adopted an unfunded deferred compensation plan for officers and directors and employees captioned "IT Corporation Deferred Compensation Plan," effective January 1, 1996 (the "Plan").

2. On June 27, 1996, the Board of Directors of IT Corporation approved and adopted a master trust agreement captioned "IT Corporation Master Trust Agreement for Deferred Compensation Plans," effective January 1, 1996 (the "Master Trust Agreement").

3. Claimant enrolled and re-enrolled in the Plan at various times from January 1, 1996, through January 17, 2002, by executing a "Plan Agreement."

4. Claimant also executed a "Beneficiary Designation and Spousal Consent Form, in which each Claimant elected to defer a fixed amount of income.

5. During the time Claimant participated in the Plan, Claimant rendered continuous service to IT Corporation.

6. Claimant, and other participants similarly situated (collectively, "Claimants"), are individually owed by the Plan the following amounts for deferred back-wages, bonuses and interest, as of December 31, 2001:

| | | |
|---|---|---|
| a. | David Backus | $  83,025 |
| b. | Rochelle Bookspan | 429,108 |
| c. | Stephen Kenney | 211,079 |
| d. | Jim Mahoney | 303,763 |
| e. | Thomas R. Marti | 119,616 |
| f. | David C. McMurtry | 77,185 |
| g. | Kevin R. Smith | 213,483 |
| | **Total:** | **$1,437,260** |

7. Claimants elected to defer some, in some cases virtually all, of their base salary and year-end bonuses.

8. There are additional participants in the Plan. The total number of such participants is unknown, as is the total amount of unpaid account balances owing by the Plan.

1

9. A short time prior to creation of the Plan on or about January 1, 1996, one or more authorized executive officers of IT Corporation held a series of meetings at IT Corporation's corporate headquarters in Torrance, California.

10. During the meetings, such officers made various statements and representations to small groups of senior officers and professional personnel of IT Corporation and its affiliates.

11. The officers encouraged such officers and professional personnel to enroll and participate in the Plan.

12. The officers were questioned by one or more participants, by one or more senior officers and professional personnel regarding the provision in the proposed plan making the plan "unfunded."

13. The officers stated, represented and promised, on behalf of IT Corporation, among other things, that if the company (understood to mean IT Corporation) were ever in danger of filing bankruptcy, the company would fund the Plan in full to secure all amounts owing under the Plan (hereinafter referred to as the "Funding Representations").

14. The officers also stated that the Plan provided for cash withdrawal upon demand for participants, subject to a 15% termination penalty, as another provision safeguarding amounts owed to participants.

15. The officers had private discussions with at least one participant making and re-confirming the Funding Representations.

16. The executive officer briefed the Board of Directors of IT Corporation regarding the terms of the Plan.

17. The Board of Directors approved the Plan.

18. The officer had actual and apparent authority to bind IT Corporation to the Plan regarding the Funding Representations.

19. The Plan allows employees of the Debtors to defer income until various times after an employee is terminated. (Plan ¶ 5.2 at 9: "Such [Termination] Benefit shall be payable in either a lump sum or in equal monthly payments over a period of 60, 120 or 180 months, as selected by the Participant . . .").

20. The Plan states that it is subject to ERISA. (Plan at ¶ 13.9 at 19)

21. The Plan is a "plan, fund or program . . . maintained by an employer" within the meaning of 29 U.S.C. § 1002(2)(A).

22. The terms of the Plan provide "retirement income" to employees within the meaning of 29 U.S.C. § 1002(2)(A).

23. The terms of the Plan provide for the deferral of income by employees for periods extending to the termination of covered employment or beyond, within the meaning of 29 U.S.C. § 1002(2)(A).

24. The Plan is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(3).

25. The Plan is an employee benefit plan within the meaning of 29 U.S.C. § 1002(3), covered by Subchapter I of ERISA, unless otherwise excepted by other subsections of ERISA.

26. During the period from 1996 through 2001:

   a. Participation in the Plan was offered to any and all officers and employees of the Debtors with a salary in excess of $100,000.00.

   b. Several levels of non-management personnel, e.g., engineers, participated in the Plan.

   c. Participation in the Plan was offered to, and included, additional individuals who were not management or highly compensated.

   d. The Plan includes many participants who are not members of a select group of management or highly compensated employees.

   e. No members of the group afforded the opportunity to participate in the Plan occupied a position of such influence that he or she was able to influence the retirement benefits to be provided under the Plan, any of the terms of the Plan, or to otherwise protected his or her retirement benefits by direct negotiations with the Debtors.

   f. No members of the group permitted to participate in the Plan occupied positions with the Debtors of such influence that they could have protected their deferred compensation expectations by direct negotiations with the Debtors.

   g. No officers or employees of the Debtors had the ability to negotiate the terms of the Plan.

   h. No officers or employees of the Debtors were represented by counsel in connection with negotiations regarding the initial design and operation of the Plan.

   i. Participants in the Plan were allowed to continue participating notwithstanding changes in job status such as a demotion.

27. The Plan was not maintained by the Debtors primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees.

28. IT Corporation created the Plan.

29. IT Corporation was the grantor for the Plan's Trust.

30. IT Corporation's employees were participants in the Plan.

31. IT Corporation and its various affiliates were the "employer(s)" for all purposes under the Plan.

32. IT Corporation employees were members of the Committee charged with administering the Plan (the "Committee").

33. IT Corporation's President and CEO selected the Committee members.

34. IT Corporation was responsible for funding the Plan.

35. IT Corporation was responsible for withholding and remitting FICA taxes relating to amounts deferred by participants in the Plan.

36. IT Corporation is responsible for periodically providing account statements to participants in the Plan.

37. IT Corporation provided its attorney to the Committee for consultations.

38. IT Corporation is required to indemnify Committee members.

39. IT Corporation is required to provide extensive information regarding participants including date of retirement, date of death, date of termination of employment, to the Committee.

40. The foregoing conduct, along with other conduct, constitutes engaging in a "discretionary acts of plan "management" and "administration," within the meaning of ERISA § 3(21)(A).

The foregoing facts/circumstances support the following Claims for Relief against IT Corporation and other defendants, including without limitation:

    a. Breach of Contract—to Enforce Rights Under the Terms of the Plan, 29 U.S.C. § 1132(a)(1)(B) (failure to make contributions required by the terms of the Plan);

    b. Breach of Contract—to Enforce Rights Under the Terms of the Plan, 29 U.S.C. § 1132(a)(3)(B) (failure to make certain contributions required by the terms of the Plan);

    c. Equitable Estoppel—29 U.S.C. § 1132(a)(1)(B) (Debtor is estopped to deny that certain contributions are required by the terms of the Plan);

    d. Equitable Estoppel—29 U.S.C. § 1132(a)(3)(B) (Debtor is estopped to deny that certain contributions are required by the terms of the Plan);

e. Breach of Fiduciary Duty—Intentional/Negligent Misrepresentation; 29 U.S.C. § 1132(a)(2) (misrepresentation that the company would fund the Plan if there ever was a risk of the company filing bankruptcy);

f. Breach of Fiduciary Duty—Intentional/Negligent Misrepresentation, 29 U.S.C. § 1132(a)(3)(B) (misrepresentation that the company would fund the Plan if there ever was a risk of the company filing bankruptcy);

g. Breach of Fiduciary Duty—Failure to Make Contributions Pursuant to terms of the Plan, 29 U.S.C. §§ 1132(a)(2), 1109, 1145;

h. Breach of Fiduciary Duty—Failure to Make Contributions Pursuant to terms of the Plan, 29 U.S.C. §§ 1132(a)(3)(B), 1109, 1145;

i. Failure of Employer to Make Plan Contributions Required by Federal Law and the Plan, 29 U.S.C. §§ 1132(a)(3)(B), 1145;

j. Breach of Fiduciary Duty—ERISA Minimum Funding Standards, 29 U.S.C. §§ 1132(a)(2), 1109, 1082; and

k. Breach of Fiduciary Duty—ERISA Minimum Funding Standards, 29 U.S.C. §§ 1132(a)(3), 1109, 1082.

On account of the foregoing Claims for Relief, Claimant seeks the following legal and equitable relief, without limitation:

a. an allowed claim in the amount of total contributions/ payments owing to the Plan from 1996 – 2001, as stated in the aggregate amount of the unpaid account balance on each Participant's Statement of Account as of December 31, 2001, but in no event an amount less than $1,437,260 + interest plus attorneys' fees; or, alternatively, in the amount of the unpaid minimum funding contributions owed to the Plan, pursuant to 29 U.S.C. § 1082;

b. imposition of a lien pursuant to 29 U.S.C. § 1082(f)(1)–(4), and any other applicable provision of ERISA or the IRC, on all property of each and every Debtor which filed for bankruptcy protection, whether real or personal, as members of a controlled group of corporations, in the amount of aggregate unpaid installments/payments due the Plan from 1991 – 1996 that exceeds $1,000,000;

5

102

  c. a determination that the amount with respect to which a lien is imposed shall be treated as taxes due and owing the United States pursuant to 29 U.S.C. § 1082(f)(4)(C);

  d. a determination that the amount with respect to which a lien is imposed shall be afforded a first priority under the Bankruptcy Code, 11 U.S.C. § 503(b)(1)(B) and 507(a)(1);

  e. restitution of all monies withheld from Claimants' paychecks and/or back pay retained in the Debtors' general accounts, in the amount of the aggregate amounts owed Claimants in their Statements of Account;

  f. reformation of the Plan to include the provision requiring IT Corporation to fund the Plan in full in the event of a pending bankruptcy filing;

  g. a finding that, as a consequence of Defendants' actions, the Debtor negligently failed to make contributions/payments to the Plan from 1996 – 2001 in the aggregate amount of the unpaid account balance on each Participant's Statement of Account as of December 31, 2001, but in no event less than: $1,437,260; or, alternatively, in the amount of the unpaid minimum funding contributions owed to the Plan, pursuant to 29 U.S.C. § 1082;

  h. for costs of suit and attorneys' fees according to proof pursuant to ERISA's fee-shifting statute, 29 U.S.C. § 1132(g), and pursuant to the Plan ¶ 13.16 at 20 (1996), and D.Del. L.R. 54.3; and

  i. for such other and additional relief as the Court deems just and proper under the circumstances.

In the event a lien is not imposed pursuant to 29 U.S.C. § 1082(f)(1)–(4), and any other applicable provision of ERISA or the IRC, and the foregoing claims are not allowed 503(b)(1)(B) and 507(a)(1), then Claimant asserts in the alternative priority claims under 11 U.S.C. § 507(a)(4) on account of amounts due under the Plan.

United States Bankruptcy Court
District of Delaware

*In re The IT Group, Inc., et al.*
Bankr. Case No. 02-10118 (MFW)
Proof of Claim

### EXHIBIT # 2
### STATEMENT OF RELATED PROOFS OF CLAIM

Each of the individuals below are participants in the Debtors' deferred compensation plan captioned: "The IT Corporation Deferred Compensation Plan, Effective 1/1/96" (the "Plan"). Each participant has or will file proofs of claim against one or more of the Debtors. Claimant is informed that each claim is related to one another in that the facts and circumstances relative to each Participant's claims are similarly situated.

1. David Backus;
2. Rochelle (Shelley) Bookspan;
3. Stephen (Casey) Kenney;
4. Jim Mahoney;
5. Thomas R. Marti;
6. David C. McMurtry; and
7. Kevin R. Smith

# IT CORPORATION
## DEFERRED COMPENSATION PLAN Beginning 01/01/1996
*Benefit Statement for 01/01/2001 to 12/31/2001*

Date of Birth: 6/16/1949
Social Security:
Employee #: 803442

ROCHELLE BOOKSPAN
1807 LASUEN RD.
SANTA BARBARA, CA 93103

Date of Hire: 12/18/1988
Effective Date of Participation: 08/01/1997
Years of Participation: 5
Years of Service: 13

**Crediting Rate**
Prime Rate + 1

Percent
10.5000%

## Account Summary

| | 12/31/2000 Account Balance | Contribution | Forfeiture | Distribution | Interest Credited | 12/31/2001 Account Balance | Vested Percent | 12/31/2001 Vested Balance |
|---|---|---|---|---|---|---|---|---|
| Bonus Deferral | $ 19,479.04 | $ 0.00 | $ 0.00 | $ 0.00 | $ 2,045.30 | $ 21,524.34 | 100.00% | $ 21,524.34 |
| Salary Deferral | $ 368,854.61 | $ 0.00 | $ 0.00 | $ 0.00 | $ 38,729.73 | $ 407,584.34 | 100.00% | $ 407,584.34 |
| Total | $ 388,333.65 | $ 0.00 | $ 0.00 | $ 0.00 | $ 40,775.03 | $ 429,108.68 | | $ 429,108.68 |

Prepared by Clark/Bardes Consulting - Compensation Resources Group, Inc.
For more information, please call Tim Percy at (213) 438-6353.

105