EXHIBIT "9"

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>THE IT GROUP, INC.,<br>*et al.*,<br><br>　　　　　　Debtors. | Chapter 11<br><br>Case No. 02-10118 (MFW)<br><br>(Jointly Administered) |

---

**FIRST AMENDED JOINT CHAPTER 11 PLAN
FOR THE IT GROUP, INC. AND ITS AFFILIATED DEBTORS
PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

---

Dated: February 9, 2004

SKADDEN, ARPS, SLATE
MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636
(302) 651-3000

ATTORNEYS FOR THE DEBTORS.

WHITE & CASE LLP
Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, FL 33131
(305) 371-2700

THE BAYARD FIRM
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000

ATTORNEYS FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS

MIAMI 453533 v2 (2K)

184

Table of Contents

Page

ARTICLE I. DEFINITIONS AND INTERPRETATION .................................................................. 2
   1.1   Definitions. ................................................................................................................. 2
   1.2   Interpretation ............................................................................................................ 11
   1.3   Application of Definitions and Rules of Construction Contained in the Bankruptcy Code. .......... 11
   1.4   Other Terms. ............................................................................................................ 11
   1.5   Appendices and Plan Documents. ............................................................................. 11
ARTICLE II. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ............................... 12
   2.1   Claims and Equity Interests Classified. ..................................................................... 12
   2.2   Administrative Claims and Tax Claims. ................................................................... 12
   2.3   Claims and Equity Interests. ..................................................................................... 12
   2.4   Consolidated Plan. ................................................................................................... 12
   2.5   Separate Classification of Secured Claims. .............................................................. 12
ARTICLE III. IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND EQUITY INTERESTS ......... 12
   3.1   Unimpaired Classes of Claims and Equity Interests. ................................................ 12
   3.2   Impaired Classes of Claims and Equity Interests. ..................................................... 13
   3.3   Impairment Controversies. ....................................................................................... 13
ARTICLE IV. PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN ........ 13
   4.1   Treatment of Claims and Equity Interests. ............................................................... 13
   4.2   Litigation Trust Alternative. ..................................................................................... 15
ARTICLE V. PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN ............. 15
   5.1   Treatment of Administrative Claims. ....................................................................... 15
   5.2   Treatment of Tax Claims. ........................................................................................ 16
ARTICLE VI. ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS ........ 16
   6.1   Classes Entitled to Vote. .......................................................................................... 16
   6.2   Class Acceptance Requirement. ............................................................................... 16
   6.3   Confirmation Without Acceptance by All Impaired Classes. ................................... 16
ARTICLE VII. MEANS FOR IMPLEMENTATION OF THE PLAN .............................................. 17
   7.1   Substantive Consolidation of Debtors. ..................................................................... 17
   7.2   IT Group Subsidiary Guarantees .............................................................................. 17
   7.3   Merger and Dissolution of IT Group Corporate Entities. ......................................... 17
   7.4   The Plan Settlement ................................................................................................. 17
   7.5   Shaw Stock. .............................................................................................................. 18
   7.6   Formation of Reorganized IT Group. ....................................................................... 18
   7.7   Oversight Committee. .............................................................................................. 18
   7.8   Plan Administrator. .................................................................................................. 20
   7.9   Chief Litigation Officer. ........................................................................................... 21
   7.10  Trusts. ...................................................................................................................... 22
   7.11  Vesting of Assets of Debtors. ................................................................................... 28
   7.12  Reconstitution of Board of Directors. ...................................................................... 28
   7.13  The New Charter and the New By-Laws. ................................................................ 28
   7.14  Cancellation of Instruments and Agreements. ......................................................... 28
   7.15  Expenses Incurred and Claims of the Indenture Trustee. ........................................ 28
   7.16  Causes of Action. ..................................................................................................... 29
   7.17  Approval of the Plan Settlement. ............................................................................. 29
   7.18  Employee Matters. ................................................................................................... 29
   7.19  Special Provisions Regarding Insured Claims. ........................................................ 29
   7.20  Appointment of the Disbursing Agent. .................................................................... 30
   7.21  Sources of Cash for Plan Distributions. ................................................................... 30
   7.22  Sources of Cash for Implementation of Plan. .......................................................... 30

(ii) with respect to an Administrative Claim, means an Administrative Claim that has become "Allowed" pursuant to the procedures set forth in Section 5.1(c) of the Plan.

(h) "Assets" means all of the Debtors' right, title and interest of any nature in property, wherever located, as specified in section 541 of the Bankruptcy Code.

(i) "Available Proceeds" means, at any time, the amount of Cash on hand in the Estates, Reorganized IT Group and, if applicable, the Litigation Trust, on and after the Effective Date, including, without limitation, any recovery from the Sevenson request for equitable adjustment to the U.S. Army Corps of Engineers, excluding (i) the Administrative Reserve (but only to the extent used to fund all reasonable costs and expenses incurred after the Effective Date associated with implementation and administration of the Plan), (ii) the Administrative Surcharge, if any, (iii) the IT Environmental Liquidating Trust Funding, (iv) the Environmental Liquidating Trust Assets, (v) Litigation Recoveries, (vi) the monies maintained in a segregated interest-bearing account on behalf of Rochelle Bookspan (approximately $500,000) pursuant to the Final Order of the Bankruptcy Court approving the Shaw Sale, but only so long as an order of the Bankruptcy Court or other court of competent jurisdiction requires that the monies in such account be segregated for the benefit of Ms. Bookspan, it being understood that thereafter such monies shall constitute Available Proceeds, and (vii) an amount sufficient to pay in Cash in full all Allowed Non-Lender Secured Claims, Allowed Administrative Claims, Allowed Tax Claims and Allowed Priority Claims.

(j) "Avoidance Actions" means all Causes of Action of the Debtors and/or their Estates that arise under chapter 5 of the Bankruptcy Code.

(k) "Avoidance Action Recoveries" means, at any time, the amount of Cash or other consideration obtained by or paid to the Estates, Reorganized IT Group and, if applicable, the Litigation Trust, associated with any judgment, settlement or other disposition of Avoidance Actions, less (i) reimbursement to the Estates from the first proceeds of the Avoidance Action Recoveries of the filing fees associated with such Avoidance Actions, which moneys shall constitute and be distributed as Available Proceeds, and (ii) the Administrative Surcharge, if any.

(l) "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and codified at title 11 of the United States Code and as applicable to the Chapter 11 Cases.

(m) "Bankruptcy Court" means the Bankruptcy Court unit of the United States District Court for the District of Delaware, or such other court having jurisdiction over the Chapter 11 Cases.

(n) "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code and as applicable to the Chapter 11 Cases.

(o) "Bar Date Order" means the Final Order dated May 24, 2002 fixing July 15, 2002 as the last day to file proofs of claim against the Debtors in the Chapter 11 Cases.

(p) "Business Day" means any day on which commercial banks are open for business in New York, New York.

(q) "Cash" means legal tender of the United States of America or readily marketable direct obligations of, or obligations guaranteed by, the United States of America.

(r) "Cash Collateral Orders" means, collectively, the orders of the Bankruptcy Court in the Chapter 11 Cases authorizing and approving the Debtors' use of cash collateral under the Prepetition Credit Facility.

(s) "Causes of Action" means all claims, rights, actions, causes of action, including Avoidance Actions, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings,

the Litigation Trust Trustee, and such holder; provided, that an Administrative Claim representing a liability incurred in the ordinary course of business of the Debtors may be paid at Reorganized IT Group's or, if applicable, the Litigation Trust Trustee's, election in the ordinary course of business.

5.2    Treatment of Tax Claims.

At the election of the Debtors or, on or after the Effective Date, Reorganized IT Group or, if applicable, the Litigation Trust Trustee, each holder of an Allowed Tax Claim shall receive in full satisfaction of such holder's Allowed Tax Claim, (a) the amount of such holder's Allowed Tax Claim, with Post-Confirmation Interest thereon, in equal annual Cash payments on each anniversary of the Effective Date, until the sixth anniversary of the date of assessment of such Tax Claim (provided that the Disbursing Agent may prepay the balance of any such Allowed Tax Claim at any time without penalty); (b) a lesser amount in one Cash payment as may be agreed upon in writing by such holder and Reorganized IT Group or, if applicable, the Litigation Trust Trustee; or (c) such other treatment as may be agreed upon in writing by such holder and Reorganized IT Group or, if applicable, the Litigation Trust Trustee. The Confirmation Order shall enjoin any holder of a Tax Claim from commencing or continuing any action or proceeding against any responsible person or officer or director of the Debtors that otherwise would be liable to such holder for payment of a Tax Claim so long as no default has occurred with respect to such Tax Claim under this Section 5.2 of the Plan.

The Tax Collector of Palm Beach County has asserted an alleged Tax Claim of approximately $7,900.02  To the extent such Claim becomes an Allowed Tax Claim under the Plan, such Allowed Tax Claim shall be paid in full in Cash on the later of the Effective Date or entry of a Final Order allowing such Tax Claim. The State of Washington, Department of Revenue has also asserted an alleged Tax Claim. To the extent such Claim becomes an Allowed Tax Claim under the Plan, such Allowed Tax Claim shall be paid in full in Cash on the later of the Effective Date or entry of a Final Order allowing such Tax Claim.

## ARTICLE VI.
## ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS

6.1    Classes Entitled to Vote.

Class 2 (Non-Lender Secured Claims), Class 3 (Lender Claims), Class 4A (General Unsecured Claims), and Class 4B (Litigation Unsecured Claims) are impaired under the Plan, and the holders of such Claims shall be entitled to vote to accept or reject the Plan. Class 1 (Priority Claims) is unimpaired under the Plan, and the holders of such Claims are conclusively presumed to have accepted the Plan. Class 4C (Securities Litigation Claims), Class 4D (Subordinated Claims) and Class 5 (Equity Interests) are impaired under the Plan, and the holders of such Claims and Equity Interests shall not receive a Distribution or retain any property under the Plan and are deemed not to have accepted the Plan.

6.2    Class Acceptance Requirement.

Absent an order of the Court, only holders of Claims that are of record and as to which an objection is not pending as set forth in the Voting Procedures Order shall be entitled to accept or reject the Plan. A class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (½) in number of the Allowed Claims in such class that have voted on the Plan.

6.3    Confirmation Without Acceptance by All Impaired Classes.

The Plan shall constitute a request that the Bankruptcy Court confirm the Plan over the rejection of any Class in accordance with section 1129(b) of the Bankruptcy Code.

7.20    Appointment of the Disbursing Agent.

Upon the occurrence of the Effective Date, Reorganized IT Group or, if applicable, the Litigation Trust, shall be appointed to serve as the Disbursing Agent with respect to all of the Debtors.

7.21    Sources of Cash for Plan Distributions.

All Cash necessary for the Disbursing Agent to make payments and Distributions pursuant to the Plan shall be obtained from existing Cash balances and the disposition of the Assets pursuant to the Plan.

7.22    Sources of Cash for Implementation of Plan.

Pursuant to the Plan Settlement, the Administrative Reserve shall be held in an account maintained by Reorganized IT Group or, if applicable, the Litigation Trust, to fund post-Effective Date administrative and related costs associated with administration of the Chapter 11 Cases and implementation of the Plan including, without limitation, the fees and costs of the Disbursing Agent, Reorganized IT Group, the Litigation Trust, the Plan Administrator, the Chief Litigation Officer and the Oversight Committee pursuant to the Plan. Notwithstanding the foregoing, under no circumstances shall the Administrative Reserve be used to fund any costs or expenses of, or relating to, the IT Environmental Liquidating Trust. To the extent the Administrative Reserve is insufficient to fund administration of the Chapter 11 Cases and implementation of the Plan, an Administrative Surcharge against the Litigation Recoveries may be approved and authorized by (a) the Oversight Committee, or (b) the Bankruptcy Court upon application by the Plan Administrator, the Chief Litigation Officer, the Committee Designees, the Agent, the Lender Designees and/or the Oversight Committee, upon notice to Reorganized IT Group or the Litigation Trust (if applicable), the Plan Administrator, the Chief Litigation Officer, the Oversight Committee, the Agent and any other party in interest as directed by the Bankruptcy Court. Under no circumstances shall the Administrative Surcharge be used to fund any costs or expenses of, or relating to, the IT Environmental Liquidating Trust. In the event any moneys remain in the Administrative Reserve (including any moneys obtained as a result of any Administrative Surcharge) at the time of the final Distribution to be made pursuant to the Plan, such remaining moneys shall constitute Available Proceeds and shall be distributed as provided in Sections 4.1(c) and 4.1(d) of the Plan.

7.23    Investment of Funds Held by the Disbursing Agent; Tax Reporting by the Disbursing Agent.

Subject to section 7.10(I)(f) of the Plan, the Disbursing Agent may, but shall not be required to, invest any funds held by the Disbursing Agent pending the distribution of such funds pursuant to the Plan in investments that are exempt from federal, state, and local taxes.

7.24    Distributions under the Plan.

The Disbursing Agent shall make all Distributions required under the Plan. Whenever any Distribution to be made under this Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due. A Distribution shall be allocated to the principal amount of a Claim (as determined for federal income tax purposes) first and then, to the extent the Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

7.25    Timing of Distributions under the Plan.

Except for the initial Distribution to holders of Allowed Lender Claims (which shall be made on the Effective Date), any Distribution to be made pursuant to the Plan other than Section 7.10(I) of the Plan shall be deemed to have been timely made if made within the ten (10) Business Days immediately following the applicable Distribution Date.