EXHIBIT "22"

I, **James Mahoney**, do hereby declare as follows:

1. I am over the age of 18. If called upon to testify in this matter, I could and would competently testify as to the facts set forth herein, except as to those matters stated to be based up information and belief.

2. I am currently employed at the U.S. Department of Commerce as Assistant Secretary of Commerce for Oceans and Atmosphere and am also the Deputy Administrator at the National Oceanic & Atmospheric Administration (NOAA).

3. In 1996 and 1997, I was senior vice president at International Technology Corporation (hereinafter referred to as "ITC"), headquartered then in Torrance, California.

4. IT Corporation adopted a deferred compensation plan effective on or about January 1, 1996, captioned the "IT Deferred Compensation Plan, Eff. 1/1/96" (hereinafter referred to as the "DCP"). Prior to adoption of the DCP, two authorized executive officers of ITC, one of whom was the President and CEO of ITC (hereinafter referred to as the "Executive Officers") and of IT Corporation, held a series of meetings and discussions about the DCP at ITC's corporate headquarters in Torrance, California.

5. During these discussions, the Executive Officers made various statements and representations to small groups of senior officers, management and professional personnel and employees of ITC, IT Corporation, and their subsidiaries (hereinafter referred to as the "Prospective Participants"), including myself, about the features of the DCP. The Executive Officers encouraged the Prospective Participants to enroll and participate in the DCP.

6. The Prospective Participants and I questioned the Executive Officers regarding, among other things, the provision in the DCP purporting to make the Plan

"unfunded" and making Plan assets, if any, subject to the claims of all creditors of ITC and its subsidiaries.

    7.      The President and CEO stated and promised to me and to the other Prospective Participants, that if the company (which in the context of the meetings was understood to mean the company as a whole—ITC, IT Corporation, and all of their subsidiaries) was ever at risk of insolvency or bankruptcy, the company would contribute sufficient funds to pay the promised benefits to a trust for the exclusive benefit of the participants in the DCP; that the creditors of the company would not share in the amounts transferred to the Trust; and that the amounts held in trust would be paid in full to all participants in the Plan (hereinafter referred to as the "representations").  I was never provided a copy of the Trust.  I am informed and believe that copies of the trust were never provided to any other participant.

    8.      The Executive Officers had private discussions with the other Prospective Participants and with me, making and reiterating the foregoing representations.

    9.      Given that the purpose of the group- and private-meetings was to explain the features of a new benefit plan, and given the positions of the Executive Officers, including the President and CEO, within the company, I believe that the President and CEO and the Executive Officers sought to induce the Prospective Participants, including myself, to enroll in the Plan.  They did in fact induce me and other Prospective Participants to enroll in the DCP.

    10.     The Prospective Participants and I believed that the representations protected us from the risks of insolvency and bankruptcy of ITC and its subsidiaries.

    11.     The Prospective Participants and I relied upon the representations and would not have agreed to enroll without their benefit.

12. ITC and its subsidiaries wanted senior employees at the headquarters to participate so as to induce other participants (e.g., lower-level management and professional employees) to enroll in the Plan.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed on the date stated below in Ashburn, Virginia.

Dated: June 9, 2005

*/s/ James R. Mahoney*
James Mahoney