EXHIBIT "23"

Case 1:04-cv-00146-JJF   Document 37-32   Filed 10/11/2005   Page 1 of 7

EXHIBIT "23"

Case 1:04-cv-00146-JJF   Document 37-32   Filed 10/11/2005   Page 1 of 7

OMNIBUS BUDGET RECONCILIATION ACT
P.L. 100-203

HOUSE CONFERENCE REPORT NO. 100-495

\* \* \* \* \*

[page 499]

## JOINT EXPLANATORY STATEMENT OF THE COMMITTEE OF CONFERENCE

### AGRICULTURAL RECONCILIATION

The managers on the part of the House and the Senate at the conference on the disagreeing votes of the two Houses on the amendment of the Senate to Title I of the bill (H.R. 3545) to provide for agricultural reconciliation pursuant to section 4 of the concurrent resolution on the budget for the fiscal year 1988, submit the following joint statement to the House and the Senate in explanation of the effect of the action agreed upon by the managers and recommended in the accompanying conference report.

The *Senate* amendment struck out all of the *House* bill after the enacting clause and inserted a substitute text.

The House recedes from its disagreement to the amendment of the Senate with an amendment which is a substitute for the House bill and the Senate amendment. The differences between the House bill, the Senate amendment, and the substitute agreed to in conference are noted below, except for clerical corrections, conforming changes made necessary by agreements reached by the conferees, and minor drafting and clarifying changes.

### TITLE I—AGRICULTURE AND RELATED PROGRAMS

#### SUBTITLE A—ADJUSTMENTS TO AGRICULTURAL COMMODITY PROGRAMS

*(1) Short title*

The *Senate* amendment provides that the agricultural title may be cited as the "Agricultural Reconciliation Act of 1987".

The *House* bill contains no comparable provision.

The *Conference* substitute adopts the Senate provision. (Sec. 1001)

*(2) Agricultural Income Support Reductions*

The *Senate* amendment provides for a reduction of 1 percent in the target price level for the 1988 crops of wheat, feed grains, upland cotton, and rice, and in the level of price support for wool. Expenditures under the milk price support program for 1988 will be reduced by an amount which is equivalent to a 1 percent support price reduction. The funds will be generated through a 2.5 cent assessment on all milk purchased for commerical use during the 1988 calendar year.

In the case of the 1988 crops, the target price of wheat is reduced from $4.29 per bushel to $4.25 per bushel, the target price of feed grains is reduced from $2.97 per bushel to $2.94 per bushel, the target price for rice is reduced from $11.30 per hundredweight to $11.19 per hundredweight, and the target price for cotton is re-

2313-1245

OMNIBUS BUDGET RECONCILIATION ACT
P.L. 100–203

[page 881]

*House bill*

*Ways and Means Committee bill*

*Employer liability to participants.*—Under the Ways and Means Committee bill, the employer's liability to plan participants is increased to the full amount of termination liability following a standard termination. The plan's termination liability is determined as under present law (Code sec. 401(a)(2)), and includes all fixed and contingent liabilities to plan participants and beneficiaries, including liability for benefits in effect on the date of termination that are not protected under section 411(d)(6) of the Code or section 204(g) of ERISA.

Following a distress termination, the contributing sponsor's (and controlled group's) liability to participants is increased to the full amount of the plan's unfunded termination liability to the extent not guaranteed by the PBGC. The PBGC is entitled to recover the full amount of unfunded guaranteed benefits before any amounts are paid from the termination trust to plan participants.

*Employer liability to PBGC.*—The liability to the PBGC is increased to the full amount of unfunded guaranteed benefits.

*Standards for termination*

*Standard termination.*—The required plan asset level for a standard termination is increased to the full level of the plan's termination liability.

*Distress termination.*—A plan with assets insufficient to provide termination liability is unable to terminate unless the contributing sponsor and each member of the contributing sponsors' controlled group satisfies the criteria for a distress termination.

Under the bill, a reorganization does not qualify as a condition under which a distress termination is permitted. In addition, a distress termination is not available if any person who is a contributing sponsor of the plan or a member of the contributing sponsor's controlled group maintains a plan that is overfunded. For purposes of this rule, a plan is overfunded if the value of plan assets exceeds the plan's termination liability.

*Termination charge*

No provision.

*Replacement plans.*—If all liabilities to the PBGC have not been satisfied following a distress termination, then the contributing sponsor (and controlled group members) are precluded from establishing an arrangement under which retirement benefits are provided or providing for further accruals of retirement benefits under any arrangement previously established. The prohibition applies during the 5-year period beginning on the termination date and, to the extent provided in regulations, the 1-year period ending on the termination date.

*Security and lien rules for underfunded plans.*—The PBGC is authorized to require security in favor of the plan if, as of the close of a plan year (or such other date determined by the PBGC), the level of plan assets does not exceed 70 percent of the termination liability of the plan. The security is to be provided by the contributing

2313-1627

LEGISLATIVE HISTORY
HOUSE CONF. REP. NO. 100-495
[page 882]

sponsor or, at the request of the PBGC, by a member of the contributing sponsor's controlled group.

If the security is not provided, then a lien arises in favor of the plan in an amount determined by the PBGC. The lien is on all property and rights to property belonging to the person or persons required to provide the security. Rules similar to the rules in section 4068(c), (d), and (e) of ERISA apply with respect to the lien.

*Effective date.*—Except for the provision relating to security, the provisions are effective for terminations if notice to the PBGC is provided after June 30, 1987, and terminations initiated by the PBGC after June 30, 1987. The provision relating to security is effective with respect to plan years beginning after the date of enactment.

*Education and Labor Committee bill*

*Employer liability to participants.*—Same as the Ways and Means Committee bill, except that the bill uses the term "benefit liabilities" instead of "termination liability" (although the definitions are not substantively different), and the bill does not provide that the PBGC is entitled to full recovery before benefits are paid from the termination trust. In addition, under the bill, administrative expenses associated with the termination trust that are incurred before any liability payments have been collected are payable by the persons liable for the payments and are deducted from future payments.

*Employer liability to PBGC.*—Same as the Ways and Means Committee bill.

*Standards for termination*

*Standard termination.*—Same as the Ways and Means Committee bill. In addition, the bill clarifies that the information regarding benefits is to be sent to the same individuals who receive the notice of intent to terminate.

*Distress termination.*—The bill retains present law, except that the bill provides that a reorganization that has been converted to a liquidation qualifies as a liquidation for purposes of determining whether a distress termination is permitted. In the case of a reorganization, the PBGC is required to be notified in advance that the person intends to request the approval of the termination by the appropriate court. The bill clarifies that the determination of whether the distress criteria have been satisfied is made as of the proposed date of termination.

*Termination charge.*—In the case of any termination of a single-employer defined benefit plan, the contributing sponsor is to pay to the PBGC a separate termination charge for each participant in the terminating plan based on the deficit of the PBGC. For the period July 1, 1987, through June 30, 1990, the charge is $200 per participant. In the case of a contributing sponsor that terminates a plan in a distress termination and that also maintains a plan with assets in excess of the minimum benefit security level, the per-participant charge is doubled.

*Replacement plans.*—No provision.
*Security and lien rules for underfunded plans.*—No provision.

2313-1628

OMNIBUS BUDGET RECONCILIATION ACT
P.L. 100-203
[page 883]

*Information requirements.*—Information related to the certification by the enrolled actuary in the case of a termination need not be provided in the case of the termination of certain plans funded exclusively by individual insurance contracts or, in a distress termination, if the PBGC determines that the information is not necessary to determine the sufficiency of plan assets or the employer's liability. The information required to be provided in a standard or distress termination must be provided in the case of a termination by the PBGC at the request of the PBGC.

A penalty of up to $1,000 per day is payable to the PBGC for failure to provide required information.

*Effective dates.*—The provision relating to the termination charge is effective for terminations for which the notice to plan participants is provided on or after July 1, 1987, and terminations by the PBGC initiated on or after July 1, 1987. The other provisions are effective on the date of enactment.

*Senate amendment*

*Finance Committee amendment*

*Employer liability to participants.*—Same as the Ways and Means Committee bill, except that the Finance Committee amendment does not provide that the PBGC is entitled to recover the full amount of unfunded guaranteed benefits before any benefits are paid from the termination trust.

*Employer liability to PBGC.*—Same as the Ways and Means Committee bill, except that the amendment removes the 30 percent of net worth limit on the PBGC's lien and priority claim.

*Standards for termination.*—Same as the Ways and Means Committee bill, except that the Finance Committee amendment does not include the provision prohibiting a distress termination if the employer maintains an overfunded plan.

*Termination charge.*—No provision.

*Replacement plans.*—No provision.

*Security and lien rules for underfunded plans.*—Under the amendment, a statutory lien arises in favor of the plan to the extent that, as of the close of a plan year, (1) the plan's assets are less than 70 percent of current liability and (2) the unfunded current liability exceeds $25 million. The unamortized portion of the plan's unfunded old liability amount is disregarded in making these determinations. The lien is on all property and rights to property belonging to the contributing sponsor and the members of the controlled group of the contributing sponsor.

The lien arises on the first day of the plan year following the plan year in which the determination is made, and continues until the close of the plan year in which the plan is not described in (1) and (2) above. If, from one plan year to the next, the level of unfunded current liability increases, the amount of the lien is increased by the amount of the increase in plan underfunding. The employer is required to notify the PBGC when the plan is described in (1) and (2) above.

Rules similar to the rules in section 4068 (c), (d), and (e) of ERISA apply with respect to the lien and the amount on which it is based. As under section 4068(c), a perfected lien is treated as a Federal

2313-1629

LEGISLATIVE HISTORY
HOUSE CONF. REP. NO. 100-495
[page 884]

tax lien, and an unperfected lien is treated as a Federal tax claim. In addition, any lien created by this provision may be perfected and enforced by the PBGC or, at its direction, by the contributing sponsor or any member of the controlled group of the contributing sponsor.

*Information requirements.*—No provision.

*Effective dates.*—The provisions are generally effective for terminations notice to the PBGC for which is provided after October 16, 1987, and terminations initiated by the PBGC after October 16, 1987. The lien provision is effective with respect to plan years beginning after the date of enactment.

*Labor and Human Resources Committee amendment*

*Employer liability to participants.*—Same as the Ways and Means Committee bill, except that the amendment does not provide that the PBGC is entitled to full recovery before benefits are paid from the termination trust, and the term "benefit liabilities" is used instead of "termination liability", although the terms are not substantively different.

*Employer liability to PBGC.*—Same as the Ways and Means Committee bill.

*Standards for termination.*—Same as the Ways and Means Committee bill, except that the amendment does not contain the provisions relating to distress termination.

*Termination charge.*—No provision.

*Replacement plans.*—No provision.

*Security and lien rules for underfunded plans.*—No provision.

*Information requirements.*—No provision.

*Effective date.*—The provisions are effective on the date of enactment.

*Conference agreement*

*Employer liability to participants*

The conference agreement follows the Ways and Means Committee and Education and Labor Committee bills and the Finance Committee and Labor and Human Resources Committee amendments by increasing the employer's liability to the full amount of termination liability (sec. 401(a)(2) of the Code). Under the conference agreement, the term "benefit liabilities" is used instead of termination liability.

The conference agreement also repeals the termination trust mechanism for payment of benefits above guaranteed levels. Instead, under the conference agreement, the total amount of the employer's liability is paid to the PBGC. The PBGC pays out a portion of unfunded benefit liabilities in excess of unfunded guaranteed benefits based on the total value of the PBGC's recovery with respect to the total liability of the employer. Amounts paid to participants are allocated in accordance with section 4044.

*Employer liability to PBGC*

The conference agreement follows the Ways and Means Committee and Education and Labor Committee bills, and the Finance

2313-1630

OMNIBUS BUDGET RECONCILIATION ACT
P.L. 100-203
[page 885]

Committee and Labor and Human Resources Committee amendments.

### Standards for termination

*Standard termination.*—The conference agreement follows the Ways and Means Committee and Education and Labor Committee bills, and the Finance Committee and Labor and Human Resources Committee amendments.

*Distress termination.*—The conference agreement generally follows the Finance Committee amendment. Under the conference agreement, in the case of a reorganization, a distress termination is not available unless the bankruptcy court (or other appropriate court) determines that, unless the plan is terminated the person will be unable to pay all its debts pursuant to a plan of reorganization and will be unable to continue in business outside the Chapter 11 reorganization process.

The conference agreement follows the Education and Labor Committee bill with respect to the provisions relating to a reorganization that has been converted to a liquidation, notification to the PBGC, and the date of determination of whether the distress criteria have been satisfied.

### Replacement plans

The conference agreement follows the Finance Committee amendment.

### Security rules for underfunded plans

The conference agreement generally follows the Finance Committee amendment, with certain modifications. Under the conference agreement, if a plan amendment increasing current liability is adopted, the contributing sponsor and members of the controlled group of the contributing sponsor must provide security in favor of the plan (e.g., a bond) equal to the excess of (1) the lesser of (i) the amount by which the plan's assets are less than 60 percent of current liability, taking into account the benefit increase and the unfunded current liability attributable to prior plan amendments, or (ii) the amount of the benefit increase, over (2) $10 million. The employer must notify the PBGC of the benefit increase before it is effective. As under the Finance Committee amendment, current liability is calculated by disregarding the unamortized portion of unfunded old liability.

### Information requirements

The conference agreement follows the Education and Labor Committee bill, except that the amount of the penalty is to reflect the materiality of the failure to provide the required information.

*Effective dates.*—The provisions are generally effective in the case of terminations notice of which is provided to participants after December 17, 1987, and terminations instituted by the PBGC after December 17, 1987. The provision relating to security in the case of certain plan amendments is effective with respect to plan years beginning after the date of enactment.

2313-1631